**Ericke ECKERT, Plaintiff,**

**v.**

**David Eden LANE and John and Jane Does 1 Thru 100, Defendants.**

Civ. No. 88–3001.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

Jan. 26, 1988.

Ericke Eckert, pro se.

David Eden Lane, pro se.

### MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Plaintiff instituted this action by the filing of a complaint naming David Eden Lane and "John and Jane Does 1 thru 100" as defendants.

It is difficult to determine from the pleading filed exactly what he believes his cause of action to be, or how he believes that this court has jurisdiction of it. He says that:

> Plaintiff, Ericke Eckert, in propria persona—sui juris is a natural born Citizen of the Union and of the Sovereign State of Arkansas and Layman with inherent vested Rights (YHVH given) to protection as mandated in and by the: Inherent God given Rights to Equal Protections of all the Laws; Declaration of Independence; The Articles of Confederations and Perpetual Union; The Northwest Territory Ordinance of 1787; The Constitution of the United States of America and Bill of Rights through the Preambles; The Constitutions of of [sic] the Sovereign State of Arkansas [organic] and all organic laws and the Christian Common Law of this Sovereign State of Arkansas and the States United.

He "contends that this Court has jurisdiction in this case arising under the Constitution and laws of the United States of America which jurisdiction is prior to the

jurisdiction of diversity of citizenship in Article III, Section 2 of the U.S. Constitution, but diversity jurisdiction does exist in this case, Rights to trial by a jury are preserved in this At Law Action pursuant to the VII Amendment to the Bill Of Rights through the Preambles."

As to what he claims David Eden Lane did to him, he says:

The Defendant [David Eden Lane] has damaged this Plaintiff [Ericke Eckert] both socially and financially through actions which are causing the Plaintiff to fear for his life, vested Rights and severely impairing the Plaintiff's ability to live normally due to public scorn and public reactions within the County of Boone in the Sovereign State of Arkansas as follows:

A. That, Defendant is being tried under and in a foreign jurisdiction within this Sovereign State of Arkansas under statutory/territorial authority of the District of Columbia without causing same to prove said jurisdiction: causing Plaintiff to fear this jurisdiction will expand causing loss of Sovereignty and vested Rights of Plaintiff;

B. That, Defendant has allowed himself to be held up to public scorn for a belief in the Almighty YHVH and has allowed the entities of this jurisdiction to allege or infer that all who so believe are dangerous and a threat to society and social order and piece [sic]: causing Plaintiff to fear for his life and well being, and has caused the Plaintiff to be subjected to special treatment and harassment by entities of the District of Columbia;

C. That, it appears that the Defendant has failed to enforce and defend his vested Rights against this jurisdiction as a Citizen De Jure under the Preambles to the Constitution of the United States of America [Union] giving rise to statutory privileges being imposed upon society in general: causing Plaintiff to fear that his exercises of Constitutionally protected and guarded vested Rights (unalienable) will be construed as a crime and thus

causing further fear of Life—Rights and Liberties lost;

6. That Plaintiff has suffered loss of property and is further aggrieved and damaged by Defendant's failure to speak out as to the foregoing and the attempts by the District of Columbia to connect Plaintiff with a group allegedly called the ORDER causing the seizure of an automobile and belongings of the Plaintiff and attempts to indict Plaintiff on alleged commercial statutory and/or territorial statutory crimes of the District of Columbia while Plaintiff was within the Sovereign State of Arkansas, and not in a territorial jurisdiction or the District of Columbia, thus causing Plaintiff to suffer deprivations of inalienable vested Rights of but not limited to: IV [Warrants shall issue, but upon probable cause, supported by Oath . . .], V [nor be deprived of life, liberty, or property, without due process of law;], VI [informed of nature and cause . . . witnesses against him], IX [enumerations in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people] of the Bill of Rights through the Preambles.

He does not say what he believes John and Jane Does 1 through 100 did to him and, in fact, fails to mention them again after the style of the case.

He seeks damages against Lane in the amount of $100,000 compensatory damages and $300,000 punitive damages. He signed the complaint as "Layman In Pro. Per. Sui Juris" and affixed what appears to be a thumbprint next to his signature.

Attached to the complaint is a six-page document which he called a "Writ of Opposition and Prohibition" which, among other things, gives

JUDICIAL NOTICE that a judge cannot or may not usurp authority, or jurisdiction by intervening or acting in the above Action At Law filed in what is believed to be a Federal Courts [not the National tribunals of the District of Columbia] established to take cognizance of lawful questions under/pursuant to Article III of the Constitution (not Articles I and IV)

and not a Legislative tribunal wherein a Citizen of the Union has no standing to defend or the ability to plea a cause pursuant to limitations on governmental excesses and judicial abuse.

The court is convinced that this action should not be allowed to proceed further because this court does not have subject matter jurisdiction of the matters alleged and, even if it did, the complaint is frivolous on its face. The court will dismiss the complaint, *sua sponte.*

■ Of course, the law clearly is that the court not only has the right, but the obligation and duty to carefully consider the pleadings filed in this matter and to determine whether subject matter jurisdiction exists. If the court determines that it does not have jurisdiction, it is obligated, on its own motion if necessary, to dismiss the matter or remand a removed case to state court. *Fort v. Ralston Purina Co.,* 452 F.Supp. 241 (E.D.Tenn.1978); *Van Horn v. Western Electric Co.,* 424 F.Supp. 920 (E.D.Mich.1977); *Fischer v. Holiday Inn of Rhinelander, Inc.,* 375 F.Supp. 1351 (W.D. Wis.1973); *Sexton v. Allday,* 221 F.Supp. 169 (E.D.Ark.1963). Any action taken by a federal court which lacks subject matter jurisdiction is a nullity and either party, even the party that invoked the jurisdiction of the court, can attack jurisdiction at any time, even after judgment is rendered against him. *Amer. Fire & Cas. Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951).

■ It is clear from the complaint that, whatever plaintiff claims David Eden Lane and the 100 John and Jane Does did to him, they did not do it under color of the Constitution or laws of the United States, and, even if he had a cause of action, it was not created by the Constitution or such laws and has no connection to them.

■ Plaintiff seems to contend that, even if this court does not have federal question jurisdiction, it has diversity jurisdiction. That is not true in this case because, as indicated, plaintiff has sued not only David Eden Lane but 100 others. It is possible if not likely that at least one of the 100 John and Jane Does is a citizen of Arkansas. As is pointed out in 14 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3642, the naming of John Does as parties to an action causes federal courts not to have diversity jurisdiction unless it can be shown with some certainty that they are all residents of another state. As the Court of Appeals for the Ninth Circuit said in *Molnar v. National Broadcasting Co.,* 231 F.2d 684, 686 (9th Cir.1956):

> If the identity of defendants were known so that the pleader could state that they were citizens of Delaware, she could also state their names and allege what part each had in the management and control of the stairway. But, if the allegations that they are citizens of Delaware be, as on the face of the complaint it is, unfounded guesswork, the jurisdiction of the court is not established.... It is clear, in the absence of this identification or connection or name, that the allegations of citizenship in Delaware is illusory.

Clearly, the plaintiff, by suing 100 anonymous individuals, has deprived this court of diversity jurisdiction.

Even if this court stretched the law well past the breaking point and accepted jurisdiction of this matter, it should, nevertheless, be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the complaint is frivolous on its face. Of course, "even if a party does not make a formal motion, the court on its own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim." 5 Wright & Miller, *Federal Practice and Procedure: Civil* § 1357, and the cases cited in footnote 43 of that article.

The court has set forth above the pertinent portions of plaintiff's complaint in relation to substantive allegations, and submits that it is abundantly clear from a mere reading of these allegations that they are without legal merit. Apparently plaintiff contends that he was injured and damaged because defendant Lane has declined or refused to contest the jurisdiction of authorities that are presently holding him

on charges not specified in plaintiff's complaint. Not only do these allegations have no legal merit, they are "silly." The matter will be dismissed by separate order.

## ADDENDUM

■ The complaint described above was filed in the Fayetteville Division Office by Ericke Eckert in person on January 19, 1988. On January 25, 1988, after the above memorandum opinion was prepared but not yet filed, Eckert again appeared in the Fayetteville Division Office and filed, purportedly in behalf of defendant Lane, and allegedly signed by him with his thumbprint affixed, an eleven-page answer and a document he entitled "Declaration of Service" purporting to show service of the initial complaint on Lane on January 20, 1988.

The complaint, answer, and "Declaration of Service" all appear to have been done on the same dot matrix printer, and the same printer which has been utilized by Eckert in prior filings in this court. The right-hand justified print style all seems to have been prepared on the same personal computer using the same printer.

The "Declaration of Service" has attached to it a "Notice and Acknowledgment of Receipt of Summons and Complaint" purportedly signed by Lane (this time without accompanying thumbprint) acknowledging receipt of the initial complaint and summons on January 20, 1988.

In the answer, Lane admits all of the allegations of Eckert's complaint and admits that Eckert has been damaged in the amount prayed for in the complaint, but he claims that those damages were not really caused by him but, instead, by Morris S. Arnold, United States District Judge, Western District of Arkansas, J. Michael Fitzhugh, United States Attorney, Steven N. Snyder, Assistant United States Attorney, Beverly R. Stites, Magistrate, Naif S. Khoury, the attorney appointed to represent him in a criminal matter pending in the Fort Smith Division, and 100 John and Jane Does. He attempts to bring them into the lawsuit as third party defendants and says that they are liable for 90% of the $400,000 in damages to which he agrees Eckert is entitled.

It is obvious to the court from the circumstances related above that Eckert and Lane are "playing games" with the court and, in fact, are attempting to perpetrate fraud on the court. In the court's view, the actions of Eckert are a blatant attempt to harass and intimidate the officials which he has attempted to name by what he undoubtedly believes is a "clever" maneuver. This court recognizes the filings as what they are—thinly but badly disguised circuitous nonsense.

This court, like most courts in this country, is continually burdened with frivolous matters, many filed by *pro se* litigants, but this court has not before experienced conduct that even approaches the fraudulent nature of the conduct in this case. Courts have important business to do for citizens who have real controversies to litigate. Conduct such as this only serves to do harm to the system. Perhaps that is what was intended.

For the reasons set forth in the memorandum opinion above, the matter will be dismissed by separate order. In addition, the court will impose sanctions on Ericke Eckert under the provisions of Rule 11 of the Federal Rules of Civil Procedure. The sanction provisions now present in that rule were added in 1983 to give courts a means to sanction attorneys or individuals who, under the circumstances, deserve it. Since the adoption of that rule, courts have imposed substantial sanctions on attorneys and parties for actions much less pernicious than those of Ericke Eckert in this case.

The rule provides that the signer of any pleading certifies that it is "grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." The rule goes on to provide that if a court decides that the rule has been violated it shall (not may) "impose upon the person who signed it, a represented party, or both, an appropriate sanction." In the court's view, if there was ever a case in which substantial sanctions are justified, this is it.

Since the court has disposed of this matter before it has been necessary for parties to answer, presumably little attorney's fees and expenses have accumulated. However, these frivolous filings have caused the personnel of the office of the United States District Clerk, and this court and its staff, to waste substantial time in accepting for filing and disposing of the matter. As partial reimbursement for that expense, and in an attempt to deter Eckert and others from such conduct in the future, the court imposes [1] sanctions upon Ericke Eckert in the amount of $1,000.00, and the United States Attorney for the Western District of Arkansas is directed to collect such amount by garnishment, execution, or other appropriate means.

This matter will be dismissed with prejudice by separate order, with such order providing for the sanctions imposed.

---

[1.] This court believes that it is normally advisable to give recalcitrant attorneys or parties an opportunity to show cause why sanctions should not be imposed, but that is clearly not required by the rule. *See* the Advisory Committee Note to the 1983 Amendments, which is reprinted at 97 F.R.D. 165, 200–201. No hearing is required. *Davis v. Veslan Enterprises,* 765 F.2d 494 (5th Cir.1985); *Rodgers v. Lincoln Towing Serv., Inc.,* 596 F.Supp. 13 (D.C.Ill.1984), *aff'd,* 771 F.2d 194 (7th Cir.1985).